UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| WESCO INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 9:24-cv-00038-MJT |
| PROJECT LONESTAR INC. D/B/A DAIRY QUEEN, | § § § § | |
| Defendant | § § § | |
| RECTEM INVESTMENTS, LLC and PELE, LLC, | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § § | |
| PROJECT LONESTAR INC., and WESCO INSURANCE COMPANY, | § § § § | |
| Defendants | § | |

**RECTEM INVESTMENTS, LLC'S AND PELE, LLC'S FIRST AMENDED COMPLAINT**

Plaintiffs, Rectem Investments, LLC and Pele, LLC ("Plaintiffs"), through their undersigned attorneys, Goodspeed Merrill, state as follows for their First Amended Complaint:

**PARTIES, VENUE, AND JURISDICTION**

1. Plaintiff Rectem Investments, LLC is a limited liability company with one member, Douglas Lutz, who is a resident and citizen of California.

1

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

2.	Plaintiff Pele, LLC is a limited liability company with one member, Peggy M. Lutz, who is a resident and citizen of Colorado.

3.	Defendant Project Lonestar, Inc., d/b/a Lonestar DQ ("Lonestar") is a corporation organized and existing under the laws of Wyoming with its principal office in Wyoming.

4.	Defendant Wesco Insurance Company ("Wesco") is a corporation organized and existing under the laws of Delaware with its principal office in New York.

5.	Accordingly, Rectem Investments is a citizen of California, Pele, LLC is a citizen of Colorado, Lonestar is a citizen of Wyoming, and Wesco is a citizen of Delaware and New York.

6.	This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because it is between citizens of different states and, as described below, the matter in controversy exceeds the sum or value of $75,000.

7.	Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

8.	Plaintiffs own real property commonly known as 2305 Atkinson Drive, Lufkin, Texas, 75901 (the "Property").

9.	Since at least 2014, the Property was used to operate a Dairy Queen franchise.

10.	The Property was previously leased to Vasari LLC pursuant to a written lease executed in 2014 (the "Lease").

11.	The Lease was assigned to Plaintiffs as lessors/owners in 2016.

12.	Lonestar runs and operates Dairy Queen franchises throughout Texas.

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

13. Prior to July 2022, Defendant Lonestar entered into a purchase and sale agreement with Vasari LLC to acquire multiple Dairy Queen restaurants or franchises.

14. Prior to July 2022, Defendant Lonestar took possession of the Property and assumed the Lease with Plaintiffs' permission or, alternatively, the Lease was assigned to Lonestar as tenant/lessee with Plaintiffs' permission.

15. Upon taking possession of the Property, Lonestar began paying rent to Plaintiffs under the Lease and operating a Dairy Queen franchise.

16. The Lease expires on December 31, 2034, and requires Lonestar to pay between $4,482.66 and $5,202.30 per month in rent from November 2023 through December 2034.

17. From November 2023 through December 2034, the Lease requires Lonestar to pay a total of over $600,000 in rent.

18. Section 18.3 of the Lease allows late charges of 5% if rent is not timely paid.

19. Pursuant to Section 9.1 of the Lease, Lonestar "shall at its sole cost and expense keep and maintain the Leased Property, including sidewalks, landscaping and driveways located on the Premises, in good order and condition and repair . . . [and] shall at its sole cost and expense make all needed repairs to and replacements of the Leased Property, interior and exterior, structural and nonstructural, ordinary and extraordinary."

20. Pursuant to Section 9.1 of the Lease, Plaintiffs have "no responsibility to maintain or pay for any part of the maintenance or replacement of the Leased Property."

21. Section 6.1 of the Lease requires Lonestar to pay all real property taxes applicable to the Property.

22. If Lonestar fails to pay all real property taxes and continues this failure for 20 days after receiving written notice from Plaintiffs, Plaintiffs may pay the taxes and charge Lonestar interest at the rate of 6%.

23. Section 13 of the Lease requires Lonestar to procure and maintain an all-risk insurance policy covering loss or damage to the Property in the amount of the Property's full replacement value.

24. Section 13 of the Lease requires any insurance policy to be carried in favor of Lonestar and Plaintiffs.

25. Section 13 of the Lease requires insurance benefits to be held in escrow and made available for the purpose of replacing or rebuilding the Property.

26. Section 14 of the Lease provides that, if there is a partial or total destruction of the Property and insurance proceeds are made available to Lonestar, Lonestar shall cause the Property to be promptly repaired substantially to the condition existing immediately prior to such damage.

27. Section 18.1 of the Lease provides that Lonestar is in material default and breach of the Lease upon several occurrences, including (a) failure by Lonestar to timely pay rent for 10 days after receiving written notice from Plaintiffs; (b) Lonestar's abandonment or cessation of business for more than seven days at the Property and cessation of rent payments; and (c) Lonestar's failure to observe any other provision of the Lease for 30 days after receiving written notice from Plaintiffs.

28. Section 19.14 of the Lease provides that, if Plaintiffs or Lonestar bring any action for relief against the other arising out of the Lease, the prevailing party shall be entitled to an award of its reasonable attorney fees and costs.

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

29. Lonestar was operating a Diary Queen on the Property on or around July 29, 2022.

30. On or around July 29, 2022, a Lonestar employee turned on and/or or was using a deep fryer in the kitchen.

31. The employee left the kitchen while the deep fryer was on, leaving no employees in the kitchen and no employees to observe the deep fryer.

32. The deep fryer began smoking and caught on fire when no employees were present in the kitchen.

33. After the fire had grown substantially, a Lonestar employee used a fire extinguisher in an unsuccessful attempt to put out the fire.

34. The Lonestar employee used the wrong kind of fire extinguisher.

35. The fire continued to spread and caused substantial damage to the Property (the "Loss.")

36. Lonestar ceased business activities at the Property immediately after the Loss and has not subsequently resumed business activities.

37. Lonestar stopped paying rent in November 2023.

38. Lonestar did not pay real property taxes on the Property for the 2023 taxable year.

39. Lonestar has not repaired or replaced the Property.

40. On or around February 22, 2024, Plaintiffs provided Lonestar with written notice that it was in breach of the Lease.

41. In the February 22 written notice, Plaintiffs asked Lonestar to remedy its breaches within the respective time periods provided in the Lease.

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

42. More than 80 days have passed since Lonestar received the written notice, but Lonestar has failed to remedy any of the breaches identified in the written notice.

43. Following Lonestar's failure to remedy the breaches, Plaintiffs paid the 2023 and 2024 real property taxes themselves.

44. Wesco Insurance Company ("Wesco") issued Commercial Policy No. WPP1929037 00 that listed "Project Lonestar Inc DBA: Dairy Queen" as the named insured (the "Policy").

45. The Policy lists the Leased Premises in the declarations.

46. According to Wesco's allegations in this action, Lonestar has received over $600,000 in insurance benefits following the Loss.

47. However, following receipt of these benefits, Lonestar has not repaired or replaced the Leased Property.

48. According to Wesco's allegations in this action, the Policy only provides coverage for business personal property that was acquired or made at Lonestar's expense.

49. Prior to the Loss, Plaintiffs' lender asked Plaintiffs for proof of property insurance covering the Property.

50. Plaintiffs, in turn, asked Lonestar to provide proof of property insurance covering the Property.

51. In response, Lonestar sent Plaintiffs a document titled Evidence of Commercial Property Insurance (the "Evidence of Insurance").

52. Plaintiffs proceeded to send the Evidence of Insurance to their lender.

53. The Evidence of Insurance states that the Policy provides both "Building" and

6

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

"Building Personal Property" coverage.

54. The Evidence of Insurance states that the Policy includes replacement cost coverage, coverage for loss to "undamaged portion of bldg," demolition costs, increased cost of construction, and wind/hail coverage.

55. The Evidence of Insurance designates Plaintiffs' lender as mortgagee under "Additional Interest."

56. Plaintiffs and their lender accepted the Evidence of Insurance as proof that Lonestar had acquired property insurance on the Property.

57. Plaintiffs relied on these representations by allowing Lonestar to continue occupying the Property and operating the Dairy Queen.

## CLAIM I – BREACH OF CONTRACT
### (Against Defendant Lonestar)

58. Plaintiffs restate and reincorporate the above allegations as though fully set forth herein.

59. The Lease represents a valid and enforceable contract between Plaintiffs and Lonestar.

60. Lonestar has not paid rent since November 2023; it abandoned and ceased business at the Leased Property and stopped paying rent; it has not paid the 2023 real property taxes; and it has not repaired or replaced the Property.

61. Plaintiffs provided Lonestar written notice of these failures, but to date, Lonestar has failed to cure or remedy the failures.

62. Accordingly, Lonestar is in material default and breach of the Lease.

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

63. Lonestar's breach has damaged Plaintiffs because Plaintiffs have not received rent, Plaintiffs had to pay the applicable real property taxes, and the Property has not been repaired or replaced.

64. Given Lonestar's breach, Plaintiffs are entitled to monetary damages including past due and future rent, repayment of real property taxes, repair or replacement of the Property, all applicable penalties and interest due under the Lease, and reasonable attorney fees.

### CLAIM II – SPECIFIC PERFORMANCE
### (Against Defendant Lonestar)

65. Plaintiffs restate and reincorporate the above allegations as though fully set forth herein.

66. Section 9.1 of the Lease requires Lonestar to "at its sole cost and expense keep and maintain the Leased Property" and "make all needed repairs to and replacements of the Leased Property, interior and exterior, structural and nonstructural, ordinary and extraordinary."

67. Following the Loss, Lonestar has failed and/or refused to repair or replace the Property.

68. Accordingly, Plaintiffs request an order from this Court compelling Lonestar to repair or replace the Property in accordance with the Lease's terms.

### CLAIM III – DECLARATORY JUDGMENT
### (in the alternative to Claim II)
### (Against Defendant Lonestar)

69. Plaintiffs restate and reincorporate the allegations contained in Paragraphs 1 through 64 as though fully set forth herein.

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

70. Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201(a), courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be granted."

71. Section 18.2 of the Lease provides that, should Lonestar become in material default and breach of the Lease, and without prejudice to any other available remedies, Plaintiffs may terminate Lonestar's right to possession of the Property.

72. Lonestar is in material default and breach of the Lease.

73. Accordingly, Plaintiffs request a declaration from this Court that Lonestar is in material default and breach of the Lease, that the Lease is terminated, and that Plaintiffs are entitled to sole possession of the Leased Property.

### CLAIM IV – DECLARATORY JUDGMENT
### (Against all Defendants)

74. Plaintiffs restate and reincorporate the above allegations as though fully set forth herein.

75. Section 13 of the Lease requires that any benefits paid by an insurer be held in escrow and made available to replace or rebuild the Property. Section 14 of the Lease requires Lonestar to apply the insurance benefits to repair the Property.

76. Wesco has alleged that (a) it has paid Lonestar DQ at least $609,326.48 in insurance benefits pursuant to a claim Lonestar filed as a result of the Loss, and (b) Lonestar is requesting more than $600,000 in additional benefits as a result of the Loss.

77. On information and belief, the $609,326.48 that has been paid was not placed in escrow.

78. Under Sections 13 and 14 of the Lease, the payments Wesco has made or will make should be placed in escrow and applied to replace or rebuild the Property.

79. Accordingly, Plaintiffs request an order from this Court declaring the parties' rights and providing that all past and future insurance payments shall be placed in escrow and applied to repair or replace the Property.

### CLAIM V – BREACH OF CONTRACT
### (Against Defendant Lonestar)

80. Plaintiffs restate and reincorporate the above allegations as though fully set forth herein.

81. The Lease requires Lonestar to obtain an insurance policy that covers damage or loss to the Property in the amount of the full replacement value of the Property.

82. According to Wesco's allegations in this action, Lonestar did not obtain such an insurance policy, and only obtained an insurance policy that covered certain business personal property.

83. Accordingly, Lonestar breached the Lease when it failed to acquire the required insurance policy.

84. This breach damaged Plaintiffs because it prevented the Property from being repaired or replaced, and Plaintiffs are entitled to recover damages "in the amount of the full replacement value" of the Property.

### CLAIM VI – BREACH OF CONTRACT
### (Against Defendant Wesco)
### (In the alternative to Claim V)

85. Plaintiffs restate and reincorporate the allegations in Paragraphs 1 through 79 as though fully set forth herein.

10

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

86. The Policy provides coverage for Your Business Personal Property, which includes:

> (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:
>
>> (a) Made a part of the building or structure you occupy but do not own; and
>>
>> (b) You acquired or made at your expense but cannot legally remove;
>
> (7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

87. The Policy provides coverage for Personal Property of Others, which includes personal property that is:

> (1) In your care, custody or control; and
>
> (2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.
>
> However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

88. Accordingly, the Policy provides substantial benefit to Plaintiffs because it provides coverage for Plaintiffs' property, including (a) fixtures, alterations, installations, or additions owned by Plaintiffs; (b) leased personal property for which Lonestar had an obligation to insure; and (c) personal property of others.

89. Plaintiffs are intended third-party beneficiaries of the Policy because Plaintiffs were not privy to the Policy, the Policy was made for Plaintiffs' benefit, and the contracting parties intended Plaintiffs to benefit from the Policy.

90. As third-party beneficiaries, Plaintiffs are entitled to enforce the Policy's terms.

11

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

91.   Plaintiffs sustained loss to property covered by the insurance provisions described in Paragraphs 69-70, but to date Wesco has not paid Plaintiffs any of the funds.

92.   Wesco accordingly breached the Policy by failing to compensate Plaintiffs for their loss of personal property.

**CLAIM VII – NEGLIGENCE**
**(Against Defendant Lonestar)**
**(In the alternative to Claims I-V)**

93.   Plaintiffs restate and reincorporate the allegations in Paragraphs 1 through 57 as though fully set forth herein.

94.   By occupying the Property and operating a Dairy Queen on the Property, Lonestar owed Plaintiffs a duty to operate the Dairy Queen with due care and a duty to not negligently burn down the Property.

95.   Lonestar breached these duties because, through its employees/agents, it left a deep fryer on and unattended, provided the wrong kind of fire extinguisher, and used the wrong kind of fire extinguisher, which in turn caused substantial fire damage to the Property.

96.   Had Lonestar not violated these duties, Lonestar would have been able to prevent the substantial fire damage from occurring.

97.   Lonestar's breach of its duties damaged Plaintiffs because Plaintiffs' Property burned down.

**CLAIM VIII – NEGLIGENT MISREPRESENTATION**
**(Against Defendant Lonestar)**
**(In the alternative to Claims I-V)**

98.   Plaintiffs restate and reincorporate the allegations in Paragraphs 1 through 57 as though fully set forth herein.

12

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

99. Prior to the Loss, Plaintiffs asked Lonestar to provide proof that Lonestar had property insurance that covered the Property.

100. Lonestar responded by providing Plaintiffs with the Evidence of Insurance, which represented that Lonestar had secured property insurance that covered the Property.

101. Lonestar intended for this representation to guide Plaintiffs in their business.

102. This representation was false, as Lonestar had not secured property insurance that covered the Property.

103. Lonestar knew or should have known that it had not secured property insurance that covered the Property, and failed to exercise reasonable care in obtaining or communicating the information, as Lonestar was the entity that requested certain coverages and obtained the Policy.

104. Lonestar intended for Plaintiffs to rely on the representation.

105. Plaintiffs reasonably relied on the representation by forwarding the Evidence of Insurance to their lender and by allowing Lonestar to occupy the Property and operate its business on the Property.

106. Had Plaintiffs known the truth, they would have demanded that Lonestar obtain insurance that covered the Property or evicted Lonestar for a material breach of the Lease.

107. Plaintiffs' reliance on the misrepresentation resulted in damages because an insurance company has not agreed to replace or rebuild the Property, and the Property has indeed not been replaced or rebuilt.

108. Plaintiffs reserve the right to amend this Complaint as necessary.

**PRAYER FOR RELIEF**

**FIRST AMENDED PLAINTIFFS' COMPLAINT**

WHEREFORE, Plaintiffs respectfully request the following relief:

- Actual damages in an amount to be proven at trial;

- An order compelling Defendant Lonestar to repair or replace the Leased Property;

- Alternatively, a declaration that Defendant Lonestar is in material default and breach of the Lease, that the Lease is terminated, and that Plaintiffs are entitled to sole possession of the Leased Property;

- An order from this Court declaring the parties' rights and providing that all past and future insurance payments shall be placed in escrow and applied to repair or replace the Leased Property;

- Reasonable and necessary attorney fees; and

- All other relief, at law and in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

*/s Robert S. Hunger*
Robert S. Hunger
rhunger@goodspeedmerrill.com
Phone: (720) 512-2007
Fax: (720) 473-7647
Goodspeed Merrill
9605 South Kingston Ct., Suite 200
Englewood, CO 80112
*Attorneys for Plaintiffs*

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE**

14

**FIRST AMENDED PLAINTIFFS' COMPLAINT**