UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| WESCO INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 9:24-cv-00038-MJT |
| PROJECT LONESTAR INC. D/B/A DAIRY QUEEN, | § § § § | |
| Defendant | § § § § | |
| RECTEM INVESTMENTS, LLC and PELE, LLC, | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § § | |
| PROJECT LONESTAR INC., and WESCO INSURANCE COMPANY, | § § § § | |
| Defendants | § | |

**INTERVENOR PLAINTIFFS RECTEM INVESTMENTS, LLC AND PELE, LLC'S RULE 55(b) MOTION FOR DEFAULT JUDGMENT**

Intervenor Plaintiffs, Rectem Investments, LLC ("Rectem") and Pele, LLC ("Pele") (collectively "Plaintiffs"), by and through counsel, move this Court, pursuant to F.R.C.P. 55(b) for its Order: (a) finding that Plaintiffs have established their right to Default Judgment on Claims I, V, VII and VIII of their First Amended Complaint, leaving only the amount of damages for determination, ; and (b) setting this matter for a hearing on default judgment damages.

1

**INTERVENOR PLAINTIFFS RECTEM INVESTMENTS, LLC AND PELE, LLC'S RULE 55(b) MOTION FOR DEFAULT JUDGEMENT**

## INTRODUCTION

This matter arises from a July 22, 2022, building fire which destroyed a Dairy Queen restaurant building formerly located at 2305 Atkinson Drive in Lufkin, Texas (the "Fire," the "Building," and the "Property"). Plaintiffs were (and are) the Property's owners and the Property's landlord who leased the Building and Property to Defendant Project Lonestar, Inc. ("Defendant") pursuant to a lease (the "Lease"). Defendant was the Property's tenant and franchisee-operator of the Dairy Queen restaurant.

This matter was originally brought by Wesco Insurance Company against Defendant to determine insurance coverage issues between Wesco and Defendant arising out of the Fire. Plaintiffs intervened and brought claims against Wesco and Defendant. Plaintiffs' claims against Defendant can be fairly summarized as follows:

1. **Breach of Contract** against Defendant for: (a) failing to replace the Building after the Fire; (b) failing to procure required insurance to cover the replacement of the Building's structure in event of a fire; (c) failing to utilize insurance proceeds received to replace the Building; (d) failing to pay rent; and (e) failing to pay property taxes.

2. **Negligence** against Defendant for: (a) its employees' negligence in causing the Fire, combined with (b) its employees' negligence in failing to use existing means to suppress the Fire.

3. **Negligent Misrepresentation** against Defendant for misrepresenting to Plaintiffs that Defendant had procured the required insurance to cover the cost of replacing the Building.

Plaintiffs' claims for damages fall into four general categories. First, Plaintiffs seek damages to replace the Building that was destroyed by the Fire. Second, Plaintiffs seek damages

for unpaid rent and unpaid property taxes. Third, Plaintiffs seek future damages for lost future rents. Finally, Plaintiffs seek contractual late fees, interest, and attorneys' fees.

Because Plaintiffs' First Amended Complaint contains a wealth of well-pled facts, Plaintiffs respectfully submit that this Court may enter its Order that all elements of each of Plaintiffs' Claims other than the amount of damages have been deemed determined and satisfied in Plaintiffs' favor, leaving only the amount of damages to be determined after a hearing.

## ADMITTED FACTS

The following factual allegations of the First Amended Complaint are well-pled and, as explained below, admitted:

1. Plaintiffs own real property commonly known as 2305 Atkinson Drive, Lufkin, Texas, which has been used as a Dairy Queen since at least 2014 (the "Property"). *First Amended Complaint* [Doc. 45], at ¶¶ 8, 9.

2. The Property was originally leased to Vasari LLC pursuant to the Lease, which was executed in 2014. *Id*. at ¶ 10.

3. In 2016, the Lease was assigned to Plaintiffs as landlords/owners. *Id.* at ¶ 11.

4. Prior to July 2022, Defendant purchased multiple Dairy Queen franchises from Vasari, took possession of the Property, and stepped into Vasari's shoes as tenant. *Id*., at ¶¶ 13, 14.

5. After taking Possession of the Property, Defendant began paying rent to Plaintiffs as required by the Lease, and Defendant operated the Dairy Queen on the Property. *Id*. at ¶ 15. The Lease, in short, is a valid and enforceable contract between Plaintiffs and Defendant. *Id*. at ¶ 59.

6. Defendants' obligations under the Lease include:

3

**INTERVENOR PLAINTIFFS RECTEM INVESTMENTS, LLC AND PELE, LLC'S RULE 55(b) MOTION FOR DEFAULT JUDGEMENT**

      a.      Paying rent in an amount between $4,482.66 and $5,202.30 per month from November 2023 through the Lease's December 2034 expiration;

      b.      Paying a 5% late charge on untimely rent;

      c.      Keeping and maintaining the Property "in good order and condition and repair";

      d.      At Defendant's sole cost and expense, making "all needed repairs to and replacements of the Leased Property, interior and exterior, structural and nonstructural, ordinary and extraordinary";

      e.      Paying all real property taxes on the Property, together with 6% interest on any property taxes not paid if Defendant fails to pay the taxes for more than 20 days after receiving written notice from Plaintiffs;

      f.      Procuring and maintaining an "all-risk" insurance policy covering loss or damage to the Property "in the amount of the Property's full replacement value," with this policy carried in favor of both Defendant and Plaintiffs; and

      g.      Holding any insurance funds in escrow to repair or rebuild the Property, and applying insurance proceeds to repair or replace the Property.

*Id*. at ¶¶ 16-26.

    7.    On July 29, 2022, Defendant's employees left a deep fryer unattended, the deep fryer caught fire, the fire spread, and the fire caused substantial damage to the Property (the "Fire" or the "Loss"). *Id*. at ¶¶ 29-35.

    8.    Defendants' employees also used the wrong type of fire extinguisher in an attempt to extinguish the fire. *Id.* at ¶¶ 33-34. Defendant provided the wrong type of fire extinguisher for the restaurant. *Id.* at ¶ 95.

9. Contrary to the Lease's terms, Defendant did not obtain an insurance policy that covers loss or damage to the Property for the full replacement cost of the Property. *Id*. at ¶ 81.

10. Defendant has failed to pay rent since November, 2023, and has failed to pay 2023, 2024, and 2025 Property taxes. *Id*. at ¶¶ 37-38; 60.

11. Prior to the Fire, Plaintiffs asked Defendant to provide proof that Defendant had property insurance that covered the Property. *Id*. at ¶ 99. Defendant responded by providing Evidence of Insurance that represented that Defendant had secured conforming insurance. *Id*. at ¶ 100. Defendant's representation was false, as Defendant had not secured property insurance that covered the Property. *Id.* at ¶ 102. Defendant intended for Plaintiffs to rely on this representation to guide Plaintiffs in Plaintiffs' business, and Plaintiffs reasonably relied on this representation. *Id*. at ¶¶ 101, 104, 105, 106. Defendant knew or should have known that this insurance representation was false, and Defendant failed to exercise care in obtaining or communicating this information. *Id.* at ¶ 103.

12. Defendant has not repaired or replaced the Property. *Id.* at ¶¶ 39, 60.

13. Plaintiffs provided written notice to Defendant of its breaches of the Lease and requested that Defendant remedy its breaches within the time periods specified in the Lease, but Defendant has not remedied its breaches. *Id.* at ¶¶ 40-42, 61.

14. As a result of Defendant's breach of contract, negligence, and negligent misrepresentation, Plaintiffs were damaged, including: (a) unpaid Rent, (b) unpaid Property Taxes, and (c) the cost to replace the destroyed Building. *Id.* at ¶¶ 63, 84, 97, 107.

**INTERVENOR PLAINTIFFS RECTEM INVESTMENTS, LLC AND PELE, LLC'S RULE 55(b) MOTION FOR DEFAULT JUDGEMENT**

# ARGUMENT

### A. Default Judgment is Appropriate.

Default is a two-step process. *See* F.R.C.P. 55. First, when a defendant fails to plead or "otherwise defend," the clerk enters default under Rule 55(a). Second, after entry of the clerk's default, the plaintiff files a motion for entry of default judgment under Rule 55(b). In determining whether entry of default judgment is appropriate, Fifth Circuit precedent enunciates a three-part analysis: "(1) whether the entry of default judgment is procedurally warranted; (2) whether the pleadings provide a sufficient basis for judgment on the merits; and (3) what form of relief, if any, the plaintiff should receive." *Ali v. Mountain Run Solutions, LLC,*, 2021 WL 7617198, at *2 (E.D. Tex. December 22, 2021).

Whether a default judgment is "procedurally warranted" requires analysis of six factors, often referred to as the "*Lindsey* Factors." *Ali, at *2*; *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The six factors are:

[1] whether material issues of fact are at issue,
[2] whether there has been substantial prejudice,
[3] whether the grounds for default are clearly established,
[4] whether the default was caused by a good faith mistake or excusable neglect,
[5] the harshness of a default judgment, and
[6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. In the instant matter, all factors are satisfied and default judgment is appropriate.

### 1. Entry of Default Judgment is Procedurally Warranted.

#### a. No Material Issues of Fact Exist.

"It is universally understood that a default operates as a deemed admission of liability." *Matter of Dierschke,* 975 F.2d 181, 185 (5th Cir. 1992). Upon entry of default, Defendant is

6

INTERVENOR PLAINTIFFS RECTEM INVESTMENTS, LLC AND PELE, LLC'S
RULE 55(b) MOTION FOR DEFAULT JUDGEMENT

deemed to have admitted all the well-pleaded facts in Plaintiffs' First Amended Complaint. *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Ali v. Mountain Run Solutions, LLC.,* 2021 WL 7617198, at *2 (E.D. Tex. Dec. 22, 2021); *Wells v. Gautreaux*, 349 F.R.D. 101, 104 (M.D. La. 2025). Defendant is precluded from litigating these facts. *Ali,* 2021 WL 7617198, at *2. As such, no material issue of fact exists on any of the relevant facts detailed above.

### b. Plaintiffs have been substantially Prejudiced

As more fully set forth in Plaintiffs' Rule 55(a) and Rule 37 Motions [Docs. 82, 91, 92], Defendant's failure to provide discovery, attend its own deposition, participate in the defense of this case, obey Court Orders, and participate in required joint trial preparation activities has substantially prejudiced Plaintiffs' ability to prepare their case for trial. These failures, both individually and collectively, have prejudiced Plaintiffs because Defendant "threatens to bring this adversary proceeding to a halt." *Ins. Co. of the West v. H&G Contractors, Inc.,* 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011). In fact, Defendant's receipt of significant insurance proceeds from Wesco (*See, e.g.,* FAC [Doc. 45], at ¶ 46)*,* and Defendant's subsequent attempts to delay these proceedings amply demonstrate Defendant's improper frustration of these proceedings to Plaintiffs' detriment. Plaintiffs respectfully submit that the second Lindsey Factor is satisfied.

### c. The Grounds for Default are clearly established.

As documented in Plaintiffs' Rule 55(a) and Rule 37 Motions ([Docs. 82, 91, 92]), Defendant has, *inter alia*, not provided necessary discovery, ignored several Court Orders to appear for conferences, failed to participate in required joint pre-trial activities, failed to attend its own properly noticed deposition, and not communicated with its own counsel for several

7

**INTERVENOR PLAINTIFFS RECTEM INVESTMENTS, LLC AND PELE, LLC'S RULE 55(b) MOTION FOR DEFAULT JUDGEMENT**

months prior to Defendant's counsels' withdrawal. Any meaningful fraction of these activities would suffice to conclude that Defendant has actively decided to abandon this case. Taken together, Defendants' thorough and consistent disregard of this matter provides more than sufficient grounds for entry of default and, ultimately, a default judgment. The record is devoid of any explanation, or even an attempt at an explanation, to justify Defendant's months-long disregard of its duties and the Orders of this Court.

        **d.**     **The Default was not caused by a good faith mistake or excusable neglect.**

A "good faith mistake" or "excusable neglect" might explain a single instance of Defendant's conduct. However, Defendant's documented, consistent, and repeated pattern of total disregard for its obligations over a period of months cannot be explained away as a "good faith mistake" or "excusable neglect."

        **e.**     **Granting a Default Judgment is not harsh under the facts.**

There is no dispute that Defendant is aware of this lawsuit; it answered and, until receiving Wesco's funds, defended this matter. Defendant simply ceased participating in this case at a critical time: the last period before the close of discovery and through pre-trial preparation. Defendant has been served with, but ignored, this Court's Orders to appear (*see, e.g.* Minute Entries [Docs. 84, 97]) and multiple Motions and requests for participation in mandatory joint pretrial activities (*see, e.g.,* [Doc. 92, 95, 98]). Defendant has been incommunicado (including with its former attorneys) for months. Like the defaulting defendants in *Cunningham v. Polti*, Defendant has "received both ample notice of this action and sufficient time to respond." *Cunninham v. Polti*, 2020 WL 1808239, at *3 (E.D. Tex. Jan. 26, 2020). Defendant's ample opportunity and time to respond demonstrates that a default judgment is not unduly harsh here. *See id.*; *Ali,* 2021 WL 7617198, at *3.

**INTERVENOR PLAINTIFFS RECTEM INVESTMENTS, LLC AND PELE, LLC'S RULE 55(b) MOTION FOR DEFAULT JUDGEMENT**

**f.      No Good Cause exists to set aside the Entry of Default.**

Without belaboring the point, Defendant has been afforded multiple opportunities over many months to show any sign that it intends to defend this case. Moreover, Defendant's complete silence at a critical time in this matter, over the close of discovery and final pretrial preparation, both magnified the prejudice to Plaintiffs and amplified Defendant's intent to not move forward. Defendant has proffered no explanation for its conduct, and a sufficient explanation is difficult to imagine. Put bluntly, Defendant exited this case shortly after it received the insurance proceeds from Wesco, and Defendant has given no indication that it is ever coming back.

In summary, all six of the *Lindsey* Factors favor Plaintiffs here, and a grant of default judgment is procedurally warranted.

**2.     The Pleadings provide a sufficient basis for a default judgment.**

Here, courts analyze whether the operative complaint satisfies Rule 8's pleading requirements. *See Wooten v. McDonald Transit Assoc., Inc.,* 788 F.3d 490, 498 (5th Cir. 2015); *Ali*, 2021 WL 7617198, at *3. Plaintiffs' First Amended Complaint need only plead a short and plain statement of its claims, with facts sufficient to "raise a right to relief above the speculative level." *Wooten,* 788 F.3d at 498 (quoting *Ascroft v. Iqbal,* 556 U.S. 662, 678 (2009)). As detailed above, upon entry of default, all well-pleaded facts of Plaintiffs' Complaint are deemed admitted by Defendant. *Nishimatsu*, 515 F.2d at 1206; *Ali,* 2021 WL 7617198, at *2. Defendant is precluded from litigating these facts by virtue of their admission. *Ali,* at *2.

Plaintiff's First Amended Complaint contains sufficient facts to exceed the "low threshold of Rule 8." *Wooten*, 788 F.3d at 492.

### a.     Plaintiffs' Breach of Contract Claim

To prevail on their Breach of Contract claim, Plaintiffs must prove four elements: "(1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *American Akaushi Assoc., Inc. v. Twinwood Cattle Co.*. 2025 WL 450750, at *21 (Tex. App. February 11, 2025); *Clinton v. Gallup*, 621 S.W.3d 848, 851 n. 2 (Tex. App. 2021). Plaintiffs' well-pled facts establish each of these elements. There was a valid Lease between the Parties. *FAC* [Doc. 45] at ¶¶10, 11, 13, 15, 59. The Lease included Defendants' obligations to: (a) pay Rent; (b) pay property taxes; (c) keep the Property in good repair and rebuild the Property after the Fire; (d) insure the Property for full replacement value; and (e) hold insurance money received in escrow to rebuild the Property. *Id*. at ¶¶ 16-26. Plaintiffs, as landlords, provided the property, thus tendering Plaintiffs' performance. *Id*. at ¶¶ 10, 11, 13, 15. Defendant has (a) failed to pay all Rent when due; (b) failed to pay 2023 and 2024 Property Taxes; (c) failed to rebuild the Property after the Fire; (d) failed to insure the Property; and (e) failed to hold insurance money in escrow. *Id.* at ¶¶ 16-26.

Plaintiffs have, in short, provided well-pled, and now admitted, facts demonstrating an agreement, Plaintiffs' performance, Defendants' breach, and damages.

### b.     Plaintiffs' Negligence Claim

Under Texas law, to prove negligence Plaintiffs must show three things: "a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *D. Houston, Inc. v. Love,* 92 S.W.3d 450, 454 (Tex. 2002). Plaintiffs' First Amended Complaint's factual allegations allege all three elements. First, Plaintiffs alleged that Defendant, as tenant, owed Plaintiffs a duty not to burn the restaurant down. *FAC* [Doc. 45], at ¶94. As

tenant, Lonestar had a duty to exercise ordinary care to avoid injury or damage to the property. *Aircraft Holding Sols., LLC v. Learjet, Inc.*, 2022 WL 562760, at *5 (N.D. Tex. Feb. 23, 2022); *Smith v. Little,* 626 S.W.2d 906, 907-08 (Tex. App. 1981).

Second, Plaintiffs alleged that Defendant breached that duty when: (1) its employees left the fryer unattended, and it caught fire; (2) its employees used the wrong type of fire extinguisher to put out the fire; and (3) Defendant supplied the wrong type of a fire extinguisher for use in the restaurant. *Id.* at ¶¶ 29-25, 95. *Complaint of Metcalf*, 530 F. Supp. 446 (S.D. Tex. 1981) is illustrative as the facts are strikingly similar to the instant case. In *Metcalf,* a ship blew up, and the court determined that the fire was caused by a crewman (Davis) turning on a stove burner and leaving the stove unattended for an extended period of time. *Id.* at 453. The court found that, by leaving the stove unattended, the crewman was "clearly" negligent:

> The Court finds from a preponderance of the evidence that Davis was negligent on the morning of October 13, and that such negligence was a legal cause of the fire which consumed the deckhouse of the vessel…Negligence is defined generally as conduct falling below the standard established by law for the protection of others, or one's self, against unreasonable risk of harm. The standard is one of ordinary care, that which a reasonably prudent person would exercise under the same or similar circumstances. There is no direct evidence of Davis' conduct after returning to the vessel on October 13, however, the reasonable inferences to be drawn from the circumstantial evidence preponderate toward a finding of negligence. The evidence is sufficient to establish that the fire began as a grease fire in a skillet on the stove. Davis was the only person on board the vessel who at the time of the fire could have turned on one of the stove burners under the skillet and set in motion the chain of events which resulted in the casualty. It is clear that Davis left the stove unattended not momentarily, but for an extended period of time.
>
> Plaintiffs contend that Davis, being deceased, is entitled to a legal presumption that he exercised ordinary care for his own safety. Plaintiffs also contend that Davis was entitled to rely upon Desco Marine to design and manufacture the stove area so as to minimize the risk of injury from foreseeable use or misuse. Davis was not thereby relieved of the duty to exercise ordinary care for his safety and the safety of other persons and property, and any presumption that he so acted is overborne by substantial evidence to the contrary. Davis' conduct on the night in question clearly exceeded the bounds of both reasonable care for his safety and

11

**INTERVENOR PLAINTIFFS RECTEM INVESTMENTS, LLC AND PELE, LLC'S RULE 55(b) MOTION FOR DEFAULT JUDGEMENT**

> the safety of others as well as reasonable reliance on the vessel manufacturer. The decedent, in the exercise of ordinary care, should have turned off the stove before leaving the galley. The risk was a foreseeable one. Davis' heedlessness, whether or not resulting from or exacerbated by intoxication, was negligence and a legal cause of the damages sustained by plaintiffs.

*Id.*

Third, Plaintiffs have pled the resulting damage: the loss of the building as it was consumed by the fire. *FAC*, [Doc. 45, at ¶97. Plaintiffs have alleged sufficient facts to support entry of Default Judgment with respect to Plaintiffs' negligence claim.

        **c.**        **Plaintiffs' Negligent Misrepresentation Claim**

To demonstrate an actionable claim for negligent misrepresentation, Plaintiffs must show:

> that (1) the defendant, in the course of his business, profession, or employment, or in another transaction in which he had a pecuniary interest, supplied to the plaintiff false information for guidance in a business transaction, (2) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information, (3) the plaintiff justifiably relied on the information, and (4) the defendant's negligent misrepresentation proximately caused the plaintiff to suffer pecuniary loss.

*BCY Water Supply Corp. v. Residential Inv., Inc.,* 170 S.W.3d 596, 602 (Tex. App. 2005); *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 760 n. 9 (Tex. App. 2012). Plaintiffs specifically pled that Defendant, as part of its business as Plaintiffs' tenant, supplied Plaintiff with false information regarding Defendant's alleged procurement of insurance. *FAC,* [Doc. 45], at ¶¶ 81, 99, 100, 102. The First Amended Complaint alleges that, in making this representation, Defendant failed to exercise reasonable care or competence. *Id*. at ¶103.  Plaintiffs specifically allege that they justifiably relied on this information, including passing the information on to Plaintiffs' bank. *Id.* at ¶¶ 104-106. Finally, Plaintiffs specifically allege that they were damaged because, had Plaintiffs known the truth, they would have insisted that Defendant obtain proper coverage that would have paid to replace the building. *Id.* at ¶¶ 106-107. Having alleged facts

supporting each element of their negligent misrepresentation claim, a Default Judgment in Plaintiffs' favor is now appropriate.

### 3. Damages

Plaintiffs seek four distinct items of monetary damages: (1) to compensate Plaintiffs for the loss of the building (the "Building Damages"), (2) to compensate Plaintiffs for unpaid rent (the "Lost Rent Damages"), and (3) to compensate Plaintiffs for lost future rents; and (4) to compensate Plaintiffs for the unpaid property taxes (the "Property Tax Damages"). Plaintiffs also seek contractual interest on the Lost Rent and Property Tax Damages, as well as attorney's fees.

Plaintiffs acknowledge that entry of a default judgment without holding a hearing on the amount of damages is generally most suitable for cases where the damages are "liquidated" or "capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). While Plaintiffs' Lost Rent Damages and Property Tax Damages are more clearly capable of "mathematical calculation," Plaintiffs' damages for the lost building do rely on testimony as to the building's replacement cost.

### a. Building Damages.

Shortly after the fire, Defendant retained Chris Croisdale, an experienced commercial builder and general contractor, to oversee the post-fire removal of the fire-damaged debris and construction of a new building. *Exhibit 1, Excerpts from the Deposition of Chris Croisdale*, at 17/8-17/17, 20/20-20/25, 21/11-21/19, 30/25-31/8.[1] Croisdale has over 35 years of experience in building commercial buildings, holds a California General Contractor's License, and has made or reviewed bids and budgets for hundreds of commercial projects. *Id.*, at 8/17-10/14; 10/12-11/5,

---

[1] Deposition citations are given as Page/Line to Page/Line.

**INTERVENOR PLAINTIFFS RECTEM INVESTMENTS, LLC AND PELE, LLC'S RULE 55(b) MOTION FOR DEFAULT JUDGEMENT**

11/10-11/18, 11/21-13/19, 13/23-17/5.  Croisdale has also been endorsed by Plaintiff as a non-retained expert.

Croisdale testified that after inspections by multiple parties, it was concluded that the existing structure at the Property was not repairable and would have to be torn down, with a new building to be built. *Id.,* at 43/2-46/11, 90/25-93/8. Croisdale and Defendant agreed. *Id*. at 45/10-46/11.

Acting on Defendant's behalf, Croisdale selected Langston Construction, a Lufkin construction company, to undertake the rebuilding, including vetting them "with the City, and they said that they were a very legitimate and good construction company."  *Id.* at 46/16-47/16; *see also* 133/18-133/23. After significant work and due diligence, Langston submitted a bid of $1,675,550.00 for the rebuild. *Id.* at 117/25-122/13, Exhibit 2 (marked as Exhibit 21 at Croisdale deposition), at p. 2. This bid was made for the purpose of actually performing the work, and was approved by Croisdale on Defendant's behalf as a fair and reasonable bid. *Croissdale Dep.,* at 117/25-122/13. In his deposition, Croisdale confirmed his opinion that Langston's bid was fair and reasonable. *Id.*, at 122/7-122/13. After the bid was accepted, the contractor was "ready to go," "the plans were approved by the city," and the rebuild was at the stage where "[y]ou go in, and you pay your permit fees, and you pull your plans, and you can start the next day." *Id*. at 105/15-106/8; *see also, id.* at 103/16-105/14, 106/9-107/1. But, at this point, Defendant told Croisdale "let's just sit on it and hold it for awhile…." *Id.* at 105/15-106/8. The only reason the rebuild did not proceed forward on this bid and the property was not rebuilt was that Defendant said, "we don't have the money to pay for it." *Id*. at 103/16-107/1.

      **b.**     **Plaintiffs Lost Rent Damages.**

Defendant last paid rent for October 2023. *Exh. 3, Declaration of Douglas Lutz ("Lutz Declaration")*, at ¶4. Pursuant to the terms of the Lease, the Amounts due, but not paid, for past rent, together with interest and late charges per the terms of the Lease, for the period from November 1, 2023, through January 26, 2026, are $121,841.69 for unpaid rent, $6,092.11 in late charges, and $8,414.71 in interest. *Id.* at ¶8. Plaintiffs will suffer an additional loss of $435,297.14 in future lost rents. *Id.* at ¶10.

        c.       **Plaintiffs' Property Tax Damages.**

Due to Defendants' defaults, Plaintiffs have paid 2023, 2024 and 2025 Property Taxes as follows:

1. 2023: $2,483.17 (taxes), $273.16 (Angelina County penalty and interest), and $298.59 (interest)
2. 2024: $1,984.46 (taxes), and $123.96 (interest)
3. 2025: $2,008.06 (taxes) and $1.98 (interest)

*Lutz Dec.,* at ¶ 9.

There is, in short, ample credible evidence to support each part of Plaintiffs' damages.

## CONCLUSION

For all the foregoing reasons, Plaintiffs request this Court: (1) enter its Order that Plaintiff has established its right to Default Judgment on each of Plaintiff's Breach of Contract (Claims I and V), Negligence (Claim VII), and Negligent Misrepresentation (Claim VIII) causes of action, leaving only the amount of damages to be determined; (2) set this matter for a hearing on damages pursuant to F.R.C.P 55(b); and (3) provide such other relief as the Court deems just and proper.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), undersigned counsel certifies that he has attempted to confer with Defendant Project Lonestar by email on Friday, January 16, 2026 and Tuesday, January 20, 2026, to Michael Nakelah, michael@slaters5050.com, but has received no response to these attempts to confer.

.

By: /s Daniel Nelson

Date: January 20, 2026

Respectfully submitted,

/s Daniel Nelson
Daniel Nelson
Bar No. 49904
dnelson@goodspeedmerrill.com
Phone: (720) 473-7644
Fax: (720) 473-7647
Goodspeed Merrill
9605 South Kingston Ct., Suite 200
Englewood, CO 80112

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2025, I served copies of the foregoing on Project Lonestar by email and first-class mail, postage prepaid, to:

Project Lonestar
1620 Central Ave, Ste 202
Cheyenne, WY 82001

michael@slaters5050.com

s/ Daniel Nelson
Daniel Nelson

16
**INTERVENOR PLAINTIFFS RECTEM INVESTMENTS, LLC AND PELE, LLC'S RULE 55(b) MOTION FOR DEFAULT JUDGEMENT**